Good morning, may it please the court, I'm Christine Cole with the Department of Justice on behalf of the Patent Office. When Congress enacted the patent term guarantee provisions of the American Inventors Protection Act in 1999, it had essentially two primary goals. The first goal was to ensure that a successful and diligent applicant for a patent would receive a patent term of no less than 17 years. The second goal, which was to be accomplished by the patent term adjustments, was to make sure that there would be no double counting of those adjustments. So for that reason, Congress enacted specific language to avoid the double counting, and the language talks about the overlap of the period for any adjustment, right to 2A, the heart of the issue. And I guess I'm having a little difficulty taking the PTO's idea of the length of delay and matching it up with the statute. Well first of all, your honor, the length of the delay, the amount of the adjustment or the period of adjustment, is distinct from the period of delay. And I know this is a bit hard to get your mind around. I know I've had difficulty with it and I think that demonstrates the inherent ambiguity in section 2A. Really what ambiguity do you see to the extent that the periods of delay attributable to the grounds specified in 1 overlap the period of any adjustment granted under this section shall not exceed the actual days the issuance of the patent was delayed? I don't see the ambiguity. The ambiguity lies in the four words periods of delay overlap. There's certainly no ambiguity and I don't think there's any disagreement among the parties that overlap is the problem, right? You're not saying overlap is ambiguous, are you? Well yes we are. You're overlapping? Yes, because things can overlap in different ways. For example, you can have, you can say that there's a seminar that is going to be held in June and that seminar will address issues A, B, and C. Another seminar will be held in November and it will address issues B, C, and D. There's no overlap in a chronological sense, but there's certainly overlap in the content of the seminars insofar as they would both be addressing issues B and C. Wait, wait. So let me get this straight. Do you think there's an ambiguity because maybe Congress meant the word overlap to apply to content rather than chronology in the statute? Well, not content, but Your Honor, the overlap, the reason that's ambiguous is Congress didn't say that it's, that these periods of delay must occur on the same time, on the same date. In fact- What other definition for overlap could there be? The only thing you gave me was a content-based overlap, but I don't see when we're talking about chronology, which is all the statute is about is time period. How could there be any ambiguity in the word overlap? Well, the ambiguity arises from the so-called B adjustment for B delay. The difference between the B adjustment and B delay is that it's not pegged to any particular period of delay for a specific reason. Unlike the A delays, they're all well-defined in the A provision. It's- Well, the B delay is key to the issuance of a patent within three years after the actual filing date of the application in the United States. That seems like a rather pinpointed time in which to begin to measure what it is you're talking about. I have to confess that having read your brief with some care and having read the other side's brief with some care, I was totally confused about this whole thing because each of you came up with hypotheticals showing why the other's interpretation couldn't possibly be right because it comes out with strange results. I finally figured out what the problem was, and the problem was you are all focusing on the results rather than on the statute. And it seems to me that if you just begin with the statute and end with the statute, I know that's an arguable position, but let's try it just for the moment. Here's what's puzzling me about the government's position in this case. I can't find the government's reading of, to the extent that periods of delay trivial grant specified in paragraph 1 overlap, the period shall be adjusted. I can't find the government's reading in that language. Let's try this idea. What would you like the language to have said? That is to say, if you could have written that statute, would you have been happy with a statute that said something like, any time there is a conflict or a need for adjustment between guarantee A and guarantee B, putting aside guarantee C, which is not before us, the department PTO shall be free to make whatever adjustment seems equitable in order to have the patentee get a time for its patent that is as close to the 20-year statute as possible in all fairness. Would that have worked? It may have, Your Honor, but I think if I might suggest a better reconstruction of the statutory language. Good. I'm always open to new ideas. If the statute said, we have legislated, we have enacted three different categories of the statute that are reasonably delayed, the patent office should look at each of those three categories, A, B, and C, and take the one that is the greatest amount. Why take the one that's the greatest? That may come out with a perverse result in certain kinds of cases, but why pick that number? It might, but... Why not say, come out with a number that's as close to giving this person the 20 years they're entitled to after you subtract out all the delays that that person didn't cause? Why would that work? Well, again, the goal wasn't to assure a 20-year patent term. The goal was to assure a patent term of no less than 17 years. And that goal was achieved by the patent office's interpretation here. The second goal that Congress had was to avoid overlap, because it understood, and it was reasonable to presume that if you've got an A delay, for example, at the beginning of the patent examination process, that is... Why can't you avoid the overlap by simply saying, come as close to 17 years, or 20, you pick a number, come as close to 17 years as you can? Why couldn't you get there? That probably would get there, but that's not the clear-cut ground or the clear-cut language that Congress chose to use here. And again, I think... You think this language is clear-cut? No, no, I think just the opposite. I think what's clear-cut is the goal that Congress was attempting to achieve here. Speaking of goals, I'm going to take you back to 1984. There was the Patch-Waxman Act that started the patent term extension provisions we're dealing with. And of course, there was a significant trade-off here. The generic drug companies got a very significant benefit in the overriding of the Bolar opinion and the significant litigation rights that they received. Why would the patent office be cutting back on the concomitant benefit that was supposed to be of equal power, at least, given to the research drug companies? Well, first of all... Are you reading this statutory, the legislative history right is what I'm asking, when you try to limit that? Well, Hatch-Waxman, to the extent I understand it, that, first of all, it's limited solely to pharmaceuticals, whereas the patent term guarantees that are provided in 154 apply more broadly. So that's one difference. And the way in which the extensions are granted under Hatch-Waxman, it's an entirely different statutory scheme. You're right, Your Honor. The idea in all of these is to give some to one side of the equation and give something to the other. It strikes a balance. And I think that raises an important point here. There's been discussion in the Appelese brief about... Suggesting that the way this provision is worded was somehow intended to penalize the patent office or that somehow the patent office has an institutional stake in having patent terms be shorter or in delaying the examination process. None of that is true. There's not a word in the legislative history that suggests any attempt to penalize the agency. Well, I imagine they have an institutional stake in not being perceived as being dilatory in delaying applications. Correct. And what's often overlooked is that a lot of the reasons for the B delay is because the applicants have delayed along the way. And that, in fact, is why applicants... But that's taken out. Exactly. That's taken out under all equations. Your rule essentially takes the greater of A or B. Why even have an A or a B if Congress really wanted to achieve your goal? Why wouldn't they just say, here are the delay circumstances and you get those? Well, it couldn't anticipate every conceivable category of delay. It anticipated some of where delays might occur in the examination process. And that's reflected in the A adjustments and also in the C adjustments. But as the legislative history shows, it put in the B adjustment for good measure to take account of delays that couldn't be pinpointed to a particular reason. And that gets me back to where the ambiguity is. But it hardly seems that they were forcing you to make a choice between either A or B, right? Or they would have said so, as I think Brother Plager was saying a little earlier. Well, first of all, there aren't B delays in every instance. There may be circumstances where there are only A delays. And in that situation, the patent might then be issued for a term well beyond the 17 years. Again, the way the statute is worded and Congress's intent was to provide for a term of no less than 17 years, but also to prevent this sort of double counting for delays. You keep talking in terms of policy. And policy is grand. But we have statutory language. I don't disagree with your policy. I agree with every example that you gave. If I had written the statute, I would have tried to prevent that form of overlap. I agree. I'll tell you. I do. But the problem is the statute is the statute. I don't see any ambiguity and overlap. So now let's talk about periods of delay. Let's focus on the statutory language. Because I don't think any of us would disagree with your policy. It's the language, though, that we're bound by. So let's talk about periods of delay. Let's focus on statutory language. Go to B. Guarantee of no more than three year application tendency. If the issue of an original patent is delayed due to failure of the United States Patent Office to issue a patent within three years after the actual filing date, how is that not a definition that the delay is what occurs after the three year point? It seems just so crystal clear to me. Let me try and explain as best I can. It tells you that the language you just read tells you two things. It tells you when it's appropriate to even look at the B adjustment category. But it's your position that the A delays cause the B delays? In most instances, yes. There's going to be that. It's reasonable to assume. But then again, why have B delays? Just tally up the A delays. Because you could have a situation. Let's say there's a six month A delay. And the patent is issued seven months after the third year, which would be at the 43 month place. The agency assumed quite reasonably that that six month delay earlier in the examination process had some cause and effect relationship. It pushed back the ultimate issuance of the patent. Then along the way somewhere, there was another month in my hypothetical. There was an extra month of delay that can't be pinpointed to some particular event in the examination process the way the A delays are and the way the C delays are. It was an extra month for whatever reason. People were on vacation. The building was burned down and there were additional delays for whatever reason. Under that scenario and under the agency's interpretation, there is an overlap of that first six months with the six of the seven months of B delay and the adjustment. Just give me example after example that I agree with you. Policy supports not doing it that way. But language of the statute doesn't and you just keep not addressing the clear language of the statute. Let me try one more time. But we're not in no more examples. Focus on the language. I won't give you an example, but I would like to explain insofar as the language of the B delay is concerned. Again, it tells you when to start thinking about adding in a B delay. Namely, at month 36, if the patent hasn't been issued, then that triggers the consideration of a B delay. The language in B also tells you how much. Triggers the adjustment of the B delay. It tells you how much. It tells you the amount of the adjustment. It says nothing about when that delay occurred and whether there was an overlap with other delays, such as an A delay. And that was the problem. That's where the ambiguity is. You want to time shift everything up to the end of the period. And the reason for that is rooted specifically in the end of that 39-word provision. The first three years, part of the, quote, period of delay. That doesn't make sense to me. It's not consistent with the statute, which says delay is failure to issue a patent within three years after the filing date. What the agency says in its June 2004 explanatory statement in the Federal Register is that the entire period during which the application is pending, they go back and look from the statute start from. Even the district court says on page one of his opinion, the clock starts to run with the filing of the application. It's my job, Ms. Cole, to also police clocks. And you're about one minute past your entire time. All right. Thank you, Your Honor. What we'll do is we'll restore your entire rebuttal time. And if you could give Ms. Carson four extra minutes, that'll even out the time for each of the parties. Thank you very much. Thank you, Your Honor. Thank you, Ms. Cole. Hopefully, I won't need all my time. You can. If you need it, it's there. If not, we're not going to complain if you want to give some back. Thank you, Your Honor. May it please the court, my name is Pat Carson. I represent Wyeth in this case. And before we jump into the statute itself, rather than discussing the statute in a vacuum, I'd like to put the case into context. Because we're here today because the Patent Office appealed the district court's proper determination that this is the PTO had misapplied a clear and unambiguous statute and deprived two of my clients' patents. Do they get deference here for their interpretation? Absolutely not, Your Honor. Because first of all, the language of the statute is clear and unambiguous. Congress has spoken to this issue. And I can address the questions that the Patent Office has raised about what is the purported ambiguities in the statute. But it seems to me that Your Honors already have looked at the statute. Well, suppose we actually agree with her that there's ambiguity here. Then what happens? We get deference. If there is ambiguity, which we do not believe that there is, the PTO would have to be operating under an express delegation of congressional authority to make these types of rules. And they're not. They don't have the authority to make a substantive determination. They're limited to procedural guidelines, then, you think. They're limited to procedural guidelines. But they're going to tell us this is within that grant of power. And to address that, I don't think that there is a bright line rule as to what constitutes procedural versus substantive. But if we look at the importance of the property right that's being deprived of my client and other patentees here, undoubtedly, this is a substantive taking of a serious property right. So we don't have to get mired down into whether it's— I find that to be a difficult version of the test. If it's an important right, therefore it's substantive and not procedural. Because if the PTO acts procedural rules with 30 days for you to do this, 30 days for you to do that, you don't do it within 30 days, well, you lose your right to obtain your patent. That, to me, would seem ultimately incredibly substantive in terms of its result. But yet it would nonetheless clearly be procedural. So I don't think your test of the very importance of the ultimate outcome could possibly be the right test.  Where if the court decides to embrace the PTO's interpretation of this statute, then my client and all patentees have no recourse. There's no other place to go. And the cases that the Patent Office has cited in support of what constitutes procedural, for example, Cooper, it was an optional inter-parties procedure. You could always go to the court to get relief. Here, there is no place to go. If the court says that their application of the statute is correct, then we simply are deprived of patent term, as are many other patentees, with no recourse. A variant on that answer might have been to say that the difference between the case that Judge Moore suggested is one in which the patentee has the opportunity to either comply or not comply with the 30-day rule and take whatever penalty accrues, whereas under the rule adopted here by the PTO, the patentee has nothing they can do to avoid the penalty incurred by the way the PTO is reading it, according to your view. So that makes it a substantive problem imposed by the PTO without any opportunity for the patentee to avoid it. Is that your argument? That is, in a nutshell, my argument. And just to illustrate that point, the district court, when it looked at 154 section 3, which is the section of the statute that deals with the authority that's given to the patent office to implement procedural regulations, he said, you look at the authority, arguably may have been broader authority, to determine what constitutes the circumstances of applicants' delay. And said, well, maybe they had broader authority there, but the fact that they may have been given broader authority there makes it very clear that that was the only instance where they were even given remotely broader authority. And if you look at the statute, although they may have said, yes, PTO, you can determine what constitutes the circumstances of applicants' delay. Congress still put in there the guidelines as to what constitutes applicants' delay. They put in the specifics if the applicant is one month late on doing this, on doing that. So they didn't give them free reign. They gave them guidance. So how likely is it that they gave them in a single line of 154B3, which is the line that is relied on by the patent office, that they gave them this overarching authority to determine what constitutes the delay that's going to be restored to the patent term. So I think that that dichotomy in 154B3 actually illustrates the point that they don't have the authority under B3 that they're claiming they have. Could you go back and tell us what you think the statute means? What the statute means is exactly what it says. It's separate guarantees. And we take issue with the patent offices saying that it wasn't, what was Congress's intent? Well, the GATT treaty converted this country to a 20-year patent term, not a 17-year patent term. So the whole premise that this was all about 17 years of patent term, that's history. We have a 20-year patent term now. There is, as the district court noted, they didn't guarantee a 17-year patent term. They could have easily written statute that does that. And Your Honor started this by asking, well, if the PTO could write this statute, what would they write? Well, in the appendix at page 551, we've provided, Your Honors, with what the statute would be if the PTO could write it, because they have what is titled simplification of patent term adjustment. And what they're advocating here is a rule that applicants not entitled to any patent term adjustment unless the patent office fails to issue it in three years. The very simple statute that they're trying to force this very complex statute that Congress put into place to make separate guarantees, the first of which is prompt PTO action. And just to turn to, I'm sorry if I answered your question. The patent office said that we implied that somehow the statute was to punish them. But there is a guarantee of prompt PTO action here. And there has been a perception, it's being discussed now, about how the patent office has a lengthy pendency. Do you agree from a policy standpoint, interpreting the statute the way that you say it should be, is going to result in some inequity? You're going to have patentees who had a two-month delay because there wasn't an action on their first office action within 14 months. And then, as a result, the patent will issue three years in two months, possibly. There's no question, if they hadn't had the period A delay, there would be no period B delay. So the person's going to get four months credit. That's an extra two months of monopoly time with clients like yours where their patent rights are so important to them. That two months of extra monopoly is really, really tremendously valuable and has a tremendous anti-competitive effect by delaying entrance into the market by other people. The policy, to me, seems to favor them quite substantially. Do you at least acknowledge that, I'm hoping? Absolutely not. And the reason I don't acknowledge it is because that presumes There's zealous advocacy. That presumes that term at the end of the patent necessarily compensates for later issuance of the patent. And that is not, across the board, true. And this statute applies to all those... You're not suggesting, are you, that Congress had in mind the cost of money, the value of money, and was trying to put in some sort of compensatory inflationary factor? That's a very subtle argument, isn't it? No, but I do think that Congress recognized that there was a need to move patent prosecution along. And in some industries, to actually get a patent out as quickly as possible. That doesn't respond to Judge Moore's point. Judge Moore makes a very good point, which is, hey, your view of this statute builds in inequities right up front. And that's a classic example of where you're getting more than you're entitled to. What do we do about that? That's not necessarily true, because clearly Congress would have anticipated a situation like that. Because even under the Patent Office's interpretation of the statute, if you have an A delay, and let's say you have two applicants file on the same day, issue three years later, one has an A delay, the other doesn't have an A delay,  the first applicant who had that A delay will get that extra couple of months at the end. So it doesn't necessarily follow that our interpretation creates inequities up front, because both interpretations have that result. Let's assume we agree Judge Moore's case is inequitable in your favor. Would you have gone along with a PTO interpretation of the statute that would preclude those kinds of double counting? The only interpretation of the statute that we would go along with is the interpretation that's in compliance with the plain language of the statute. The statute is very, very detailed, but very straightforward as to how delays are to be calculated. And you want every bit it'll give you. Absolutely. It's a valuable property right. Would you look at the statute in the limitations section in paragraph A, where it says the period of any adjustment granted under this subsection shall not exceed the actual number of days the issuance of the patent was delayed. How does that language affect your interpretation? First of all, the statute tells you how to calculate the actual number of days that the application was delayed. But it can't exceed the number of days the issuance was delayed. But the only way that term has any meaning is by following the calculation that's set forth in the statute. Why? Let me give you an example. What if there's a two-month delay in issuing the first office action? But the reason that two months passed was because the examiner was doing a very thorough prior art search and had come up with a really good first office action that was a first office action allowance. You've had a two-month delay, but you actually got your patent in less than three years. So the only way you can give any meaning to the actual number of days that the patent was delayed is to follow the plain language of the statute. Calculate your terms according to a missed day deadline. You do the required action. That is a period of delay. You add them together subject only to the overlap provision, and that's the number you get. Your Honor, do we have any other questions? Anything further, Ms. Carson? Thank you very much, Ms. Cole. We restored your three minutes of rebuttal time. Ms. Cole, I'm guessing that the reason DOJ is here and not the PTO is you were eager to talk about that Chevron issue, and we never let you in the first opportunity you stood up. So you've got a couple minutes. You want to give it a shot? Sure. I may be wrong. Well, we were here to talk about ambiguity also. Before you wander off into Chevron, explain to us why did the department not adopt that interpretive ruling as part of its rulemaking? Did I miss something in here? I understood that the actual rulemaking you did simply basically parroted the statute. Isn't that right? Correct. In fact, when the Patent Office did the rulemaking to implement this statute back in 2000. And then they came out with this guidance. Explanation. Correct. Explanation. Why wasn't that simply made part of the basic rulemaking? Well, at the time, it didn't come up. It wasn't among the comments that were generated during that rulemaking. It didn't appear until several years later when B delays first came into being, in other words, that there was this need for further clarification. And there's nothing in the statutory provision itself, the 154B3A provision, that requires notice and comment rulemaking. This is an interpretive rule. Let me not distract you from now answering directly. I just wanted to be sure I understood the fact. Would you answer Judge Moore's question? Yes. In response to your question, as far as Chevron deference, the key question is whether or not there is statutory authority for the agency to render the interpretation that it has. And that authority is in the provision, the specific provision that was included in this statute, the 154B3A provision that directs the director of the patent office to issue regulations establishing the procedures, not only for the application of patent term adjustments, but also for the determination of it. And the statute- But why doesn't it mean stuff like you can decide whether it's decided by a three-judge panel at the board? You can decide timing for when it must be decided. Why are procedures things that go to the procedure and not the substantive outcome of the application of the statute? Well, they certainly would include the items that you mentioned. But, again, this statutory provision, while it tells PTO how much delay the one-day, the one-for-one-day calculation- But Congress didn't have to put that procedure word in there if it hadn't meant to limit your authority, right? Well, it was- I guess what would be the substance if what you're saying is the procedure involves all of the- Could you answer my question first? I'd rather have your answer than my colleagues. Thank you. I think I've forgotten your question. Why did Congress put the word procedure in if it didn't intend to limit your authority? Well, I guess I wouldn't say that it does limit the authority. I think what Congress was getting at, it was giving the agency something different from the authority that's in Section 2B, the general rulemaking procedures for the conduct of the PTO proceedings that's in 2B. Congress was obviously aware that that provision is elsewhere in the Patent Act, and it decided that for purposes of making these determinations. The rest of 154B.3 talks about and directs the director to make these determinations in accordance with the procedures and regulations that it's established. Clearly, Congress contemplated that the agency was going to have to do more than just add up some numbers. The statute, again, talks about how much of an adjustment you get for a given type of delay, and that's the one day for one day adjustment. But what the statute doesn't do, again, this goes back to the ambiguity issue, it doesn't tell PTO how to make that calculation. It doesn't say how to determine where the overlap is. But what it does say in very explicit language... You've got another overlap problem here, Ms. Cole. I agree. Do you have a final statement for us? In closing, I think the Patent Office's interpretation here is the only interpretation that accomplishes both of Congress' goals. Namely, a patent term of no less than 17 years for a diligent applicant, and that the actual number of days of delay will be compensated for in no more than the actual number of delays. Thank you, Your Honors.